UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
Washington Mutual Bank,

    Plaintiff,

v.

FIDELITY NATIONAL TITLE INSURANCE
COMPANY, Successor by Merger to Lawyers
Title Insurance Corporation,

    Defendant.
_____/

Case No. 14-13706

Hon. John Corbett O'Meara

## OPINION AND ORDER

Before the court are Plaintiff's motion to dismiss counterclaims, filed January 12, 2015, and Defendant's motion for summary judgment, filed February 18, 2015. The court heard oral argument on April 16, 2015, and took the matter under advisement.

## BACKGROUND FACTS

Plaintiff Federal Deposit Insurance Corporation ("FDIC") filed this action as receiver for Washington Mutual Bank ("WaMu"). Defendant Fidelity National Title Insurance Company is successor by merger to Lawyers Title Insurance Corporation ("Fidelity"). Lawyers Title issued closing protection letters ("CPLs")

to WaMu in connection with twenty-four mortgage loan closings in 2007. A CPL is an indemnity agreement in which the title insurance company agrees to indemnify the lender for losses related to the title company's agent's misconduct at closing. See JP Morgan Chase Bank, N.A. v. First American Title Ins. Co., 795 F. Supp.2d 624, 628-29 (E.D. Mich. 2011).

Subsequently, it was discovered that the twenty-four mortgage loans at issue were obtained as part of a fraudulent scheme orchestrated by mortgage broker Firas Bachi. Bachi purchased distressed properties in 2007 and placed them in the names of straw sellers. Bachi then caused the properties to be sold to straw buyers at significantly inflated prices. The purchases by the straw buyers were financed by mortgage loans from WaMu. As the mortgage broker, Bachi submitted false loan applications and supporting information to WaMu.[1]

The closing, title, and escrow services for the straw transactions were performed by Metro-West Title Agency. Metro-West was an authorized issuing agent of Lawyers Title (now Fidelity). WaMu's closing instructions required Metro-West to prepare a HUD-1 Settlement Statement for each transaction. FDIC alleges that Metro-West prepared false HUD-1s to conceal the true nature of the

---

[1] For his role in the scheme, Bachi pleaded guilty to one count of bank fraud in 2013. See Case No. 13-20276 (E.D. Mich.).

straw transactions from WaMu.

FDIC alleges that Fidelity is liable for the conduct of Metro-West under the CPLs and that Fidelity has breached the CPLs by failing to indemnify FDIC for its losses as a result of the fraudulent loans.

In response to FDIC's complaint, which sets forth twenty-four breach of contract counts, Fidelity has filed counterclaims for rescission (Count I) and declaratory judgment (Count II). FDIC seeks dismissal of Fidelity's counterclaims and certain affirmative defenses. Fidelity has filed a motion for summary judgment, seeking dismissal of all of FDIC's claims.

## LAW AND ANALYSIS

### I. FDIC's Motion to Dismiss

In its counterclaim seeking rescission, Fidelity contends that WaMu did not observe "objectively reasonable underwriting standards" when approving the subject loans. Fidelity alleges that its "agreement to issue CPLs to WaMu . . . was based upon the assumption that WaMu would employ objectively reasonable underwriting standards before approving and funding the transactions." Counterclaim at ¶ 44. Fidelity further alleges that it "did not agree to assume the risk of loss attributable to WaMu's failure to employ objectively reasonable underwriting standards." Id. at ¶ 52. According to Fidelity, WaMu acted recklessly

in approving high-risk loans to unqualified applicants.

FDIC argues that Fidelity's counterclaim for rescission should be dismissed because the theory that a lender must follow "objectively reasonable underwriting standards" is not relevant to whether the lender may recover for breach of contract under a CPL. In other words, WaMu's alleged negligence or recklessness in making the loans is not at issue; the issue is whether the terms of the CPLs were breached.

In order to rescind a contract based upon fraudulent inducement, a party must show:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

Custom Data Solutions, Inc. v. Preferred Capital, Inc., 274 Mich. App. 239, 243 (2006). Fidelity alleges that WaMu defrauded it by implicitly representing that it followed reasonable underwriting standards. As several courts have found, however, a lender's underwriting standards are not material to the terms of a CPL or title policy. See Fifth Third Mortg. Co. v. Chicago Title Ins. Co., 758 F. Supp.2d 476, 487-88 (S.D. Ohio 2010) (Fifth Third I), aff'd 692 F.3d 507 (6th Cir.

2012) (Fifth Third II) ("The problem with this argument is that the insurance policy says nothing about Fifth Third's underwriting obligations."); JP Morgan, 795 F.Supp.2d at 632-33 ("First American cannot avoid its indemnification obligations by arguing that WaMu was negligent in underwriting the Truong Loan. . . . WaMu's negligence is irrelevant."); FDIC v. First American Title Ins. Co., 2015 WL 418122 (E.D. Mich. Jan. 30, 2015) ("[A]dding an additional interpretation that Defendant did not intend to indemnify WaMu for its own negligence would require the Court to improperly insert terms in the CPL where none exist.").

In this case, the CPLs state that Lawyers Title (now Fidelity) "agrees to reimburse you (WaMu) for actual loss incurred by you in connection with said closing when conducted by Policy Issuing Agent and when such loss arises out of: 1. Failure to Policy Issuing Agent to comply with your written closing instructions. . . or 2. Fraud or dishonesty of Policy Issuing Agent in handling your funds or documents in connection with said closing." The CPLs contain certain exclusions (such as losses due to bank failure), but do not mention or condition indemnification upon certain underwriting standards to be followed by WaMu. The court concludes that WaMu's underwriting standards were not material to the parties' agreement as set forth in the CPLs. See Fifth Third I, 758 F. Supp.2d at

488 ("The Court finds that if the underwriting standards were truly material to Defendant's decision to issue the policy, then the Policy would expressly state that the lender's underwriting would be subject to Defendant's approval.").

Fidelity argues that WaMu *gross* negligence precludes it from recovering under the CPLs, citing Klann v. Hess Cartage Co., 50 Mich. App. 703 (1973). The court in Klann noted the general rule that "a party may contract against liability for harm caused by his negligence in performance of a contractual duty, but he may not do so with respect to his gross negligence." Id. at 706. In this case, however, the CPL is not a contract that protects WaMu from liability for its *own* negligence; rather, it protects WaMu from *Metro-West's* misconduct. Klann and the other cases relied upon by Fidelity are inapposite.

Fidelity argues that it only learned of these claims days before FDIC filed this suit and that it should have the benefit of discovery before the court dismisses its claims and defenses. Given the cases cited above, though, discovery will not assist Fidelity, as its claims must fail as a matter of law.

WaMu's allegedly negligent underwriting practices do not serve as grounds to rescind the CPLs. The court will dismiss Fidelity's rescission claim and its affirmative defenses that rely on the theory that WaMu's negligence is a defense; these are estoppel (#3), assumption of risk (#11), ratification (#12), in pari delicto

(#14), causation (#15, #16), and breach of duty of good faith (#17). See JP Morgan, 795 F. Supp.2d at 633 ("[C]ontributory negligence is not a valid defense in a breach of contract case."). Although Plaintiff seeks dismissal of the affirmative defenses of laches (#5) and waiver (#13), these defenses rely upon theories other than WaMu's negligence. As a result, the court will not dismiss these affirmative defenses at this time. The court will dismiss Fidelity's declaratory judgment claim because it either relies upon the theory of contributory negligence or it duplicates Fidelity's affirmative defenses and is superfluous. See United States v. Saporito, 684 F. Supp.2d 1043, 1064 (N.D. Ill. 2010) (the Declaratory Judgment Act is not "a vehicle for bringing counterclaims to a suit that has already been filed when those counterclaims mirror defenses already raised"); Bituminous Cas. Corp. v. J & L Lumber Co., 373 F.3d 807, 813 (6th Cir. 2004).

**II.     Fidelity's Motion for Summary Judgment**

Fidelity argues that FDIC's claims should be dismissed because the CPLs required prompt notice as a condition precedent to recovery. The loans at issue closed in 2007, FDIC sought indemnification from Fidelity in 2014. Fidelity contends that it has been prejudiced by the delay because FDIC has not provided any supporting documentation – such as loan files – regarding its claims.

FDIC responds that it did not learn of the potential claims until it took the

deposition of the former owner of Metro-West, Sarah Fawaz, on September 22, 2014. Ms. Fawaz asserted the Fifth Amendment privilege against self-incrimination when she was questioned about the closings at issue. FDIC asserts that it promptly sent Fidelity a claim letter the same day.

In its reply brief, instead of responding to FDIC's argument that it promptly asserted its claims under the CPLs, Fidelity changes tack and argues that FDIC's claims should be barred by laches. Fidelity contends that with the passage of time, Metro-West's bank records relating to the loans have been destroyed and that Fidelity has been prejudiced. It is improper for Fidelity to raise a new argument in a reply brief and the court will not consider it. See, e.g., Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008).

Further, Fidelity has failed to address the FDIC's argument that it did not learn of its potential claims under the CPLs until September 22, 2014. Accordingly, Fidelity has failed to sustain its burden of demonstrating that it is entitled to summary judgment. The court will deny its motion.

## ORDER

IT IS HEREBY ORDERED that Plaintiff's motion to dismiss counterclaims and affirmative defenses is GRANTED IN PART and DENIED IN PART, consistent with this opinion and order.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for leave to file sur-reply or to strike Defendant's reply brief is DENIED AS MOOT.

                                              s/John Corbett O'Meara
                                              United States District Judge

Date: May 12, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, May 12, 2015, using the ECF system.

                                              s/William Barkholz
                                              Case Manager