UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
Washington Mutual Bank,

    Plaintiff,

v.

    Case No. 14-13706

    Hon. John Corbett O'Meara

FIDELITY NATIONAL TITLE INSURANCE
COMPANY, Successor by Merger to
Lawyers Title Insurance Corporation,

    Defendant.
_____/

## OPINION AND ORDER

Before the court are the parties' cross-motions for summary judgment. The court heard oral argument on November 17, 2016, and took the matter under advisement. For the reasons explained below, the parties' motions are denied.

## BACKGROUND FACTS

Plaintiff Federal Deposit Insurance Corporation ("FDIC") filed this action as receiver for Washington Mutual Bank ("WaMu"). Defendant Fidelity National Title Insurance Company is successor by merger to Lawyers Title Insurance Corporation ("Fidelity"). Lawyers Title issued closing protection letters ("CPLs") to WaMu in connection with twenty-four mortgage loan closings in 2007. A CPL

is an indemnity agreement in which the title insurance company agrees to indemnify the lender for losses related to the title company's agent's misconduct at closing. See JP Morgan Chase Bank, N.A. v. First American Title Ins. Co., 795 F. Supp.2d 624, 628-29 (E.D. Mich. 2011).

Subsequently, it was discovered that the twenty-four mortgage loans at issue were obtained as part of a fraudulent scheme orchestrated by mortgage broker Firas Bachi. Bachi purchased distressed properties in 2007 and placed them in the names of straw sellers. Bachi then caused the properties to be sold to straw buyers at significantly inflated prices. The purchases by the straw buyers were financed by mortgage loans from WaMu. As the mortgage broker, Bachi submitted false loan applications and supporting information to WaMu.[1]

The closing, title, and escrow services for the straw transactions were performed by Metro-West Title Agency. Metro-West was an authorized issuing agent of Lawyers Title (now Fidelity). WaMu's closing instructions required Metro-West to prepare a HUD-1 Settlement Statement for each transaction. FDIC alleges that Metro-West prepared false HUD-1s to conceal the true nature of the straw transactions from WaMu.

---

[1] For his role in the scheme, Bachi pleaded guilty to one count of bank fraud in 2013. See Case No. 13-20276 (E.D. Mich.).

FDIC alleges that Fidelity is liable for the conduct of Metro-West under the CPLs and that Fidelity has breached the CPLs by failing to indemnify FDIC for its losses as a result of the fraudulent loans. The parties have filed cross-motions for summary judgment.

## LAW AND ANALYSIS

### I. Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### II. Fidelity's Liability under the CPLs

The FDIC contends that there is no genuine issue of material fact that Metro-West was aware of the fraudulent scheme perpetrated by Bachi. As a result, the FDIC argues that Fidelity is liable for breach of contract under the CPLs. Fidelity contends that there is insufficient evidence that Metro-West knew about and participated in the fraudulent scheme. Fidelity further argues that the FDIC should

-3-

not recover under the CPLs because (1) the FDIC failed to give prompt notice of the claims; (2) the claims are barred by laches; (3) the language of the CPLs does not trigger Fidelity's liability under these facts; (4) the FDIC cannot recover under the CPLs for loans that were discharged; and (5) the FDIC knowingly and voluntarily impaired Fidelity's right to subrogation as a result of the delay in filing its claims.

### A. Metro-West's Knowledge of the Fraudulent Scheme

From April to September 2007, Metro-West closed twenty-four separate WaMu mortgage loan transactions (to twelve borrowers) originated by First Choice Finance and Bachi. For each transaction, WaMu required the borrower to submit a down payment of approximately $25,000 at closing. Prior to each closing, WaMu provided Metro-West with written closing instructions that required Metro-West to prepare HUD-1s reflecting the receipt of the down payments from the borrowers, and that prohibited secondary financing. For each transaction, Metro-West signed the closing instructions and provided WaMu a HUD-1 certifying that the required down payment ("cash to close") was paid by the borrower. Metro-West also notarized affidavits for WaMu in which each borrower swore that the borrower paid the required down payment from his or her own funds.

For each transaction, Lawyer's Title issued a title insurance policy and a

CPL. The issuing agent was Metro-West. A title insurance policy protects against defects in title. "Comparatively, the closing protection letter contains the underwriter's promise to reimburse the addressee if loss results from an agent's failure to follow closing instructions to apply settlement funds in an honest fashion." JP Morgan Chase Bank, 795 F. Supp. 2d at 629. Specifically, the CPLs provided:

> [Lawyers Title], subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse [WaMu] for actual loss incurred by [WaMu] in connection with said closing when conducted by [Metro-West] and when such loss arises out of:
> * * *
> (2) Fraud or dishonesty of [Metro-West] in handling [Wa-Mu's] funds or documents in connection with said closing.

Pl.'s Ex. 1.

On September 25, 2008, WaMu was closed by the Office of Thrift Supervision, and the FDIC was appointed receiver. The FDIC transferred substantially all of WaMu's assets to JPMorgan Chase Bank, including the loans at issue in this case at their "book value." According to the FDIC, the total book value of the subject loans is $70,778. Lawyers Title merged into Fidelity in 2010, and Fidelity assumed all rights, assets, and liabilities of Lawyers Title.

In July 2014, the FDIC discovered criminal filings against Bachi that

referred to the WaMu loans closed by Metro-West. A grand jury had indicted Bachi in April 2013, charging him with bank fraud. According to the indictment, Bachi "would cause" Metro-West to prepare fraudulent HUD-1s that stated that the borrowers made down payments at closing, when in fact these payments were not made. After Bachi pleaded guilty, the government filed a sentencing memorandum stating that Bachi "supervised" the "owners of a licensed title company" in the scheme. The "title company" is Metro-West.

Based upon this information, the FDIC took the deposition of the owner/president of Metro-West, Sarah Fawaz, on September 22, 2014. Fawaz personally closed six of the transactions at issue. At the deposition, Fawaz invoked her Fifth Amendment privilege against self-incrimination and refused to answer questions related to the transactions. FDIC then issued a claim notice to Fidelity under the CPLs. Shortly thereafter, FDIC filed this action.

During discovery, the FDIC deposed four of the borrowers (Mercedes Colon, Francisco Marquez, Jeff Haddad, and Ramon Abreu), who accounted for eight of the loans at issue. Each testified that they paid no money to close the eight transactions, which were closed by Metro-West. The FDIC also discovered that the down payments for borrowers Jonathan Sanchez, David Alcantara, Martha Mones, Francisco Sanchez, and Adjevi Wilson (nine loans) were paid by third

parties.

The FDIC also took the deposition of Robert Guthrie, who was an incorporator/officer of Metro-West and who personally closed five of the subject loans. Like Fawaz, Guthrie invoked his Fifth Amendment privilege against self-incrimination in response to questions about the transactions. Because both Guthrie and Fawaz took the Fifth, the FDIC argues that it is entitled to an adverse inference that Metro-West was complicit in Bachi's fraudulent scheme.

The FDIC may indeed be entitled to an adverse inference that Metro-West was complicit in Bachi's fraudulent scheme. A jury could reasonably conclude that Metro-West dishonestly or fraudulently handled WaMu's funds or documents, thus triggering Fidelity's liability under the CPLs. See Bank of America v. Fidelity Nat. Title Ins. Co., __ N.W. 2d __, 2016 WL 3430535 (Mich. App. 2016) ("FNTIC") (coverage under CPL triggered when closing agent "had knowledge and participated in the fraudulent scheme"). This does not mean, however, that the FDIC is entitled to summary judgment in its favor. In a similar case involving CPLs issued by Fidelity, the Michigan Court of Appeals found that the issue of whether the closing agent's fraud or dishonesty caused the lender's losses was for the trier of fact to decide. See id. Here, the evidence is not "so one-sided" that summary judgment in the FDIC's favor is warranted. See West Hills Farms, LLC

v. ClassicStar Farms, Inc., 727 F.3d 473, 484 (6th Cir. 2013) (summary judgment with respect to fraudulent intent appropriate when the evidence is "so one-sided that no reasonable person could decide the contrary"). For example, the checks and loan files, including the HUD-1s, do not contain facial irregularities or indications of fraud. See Ex. N, Declaration of Orlando Villalba, ¶ 3; Ex. L, McCullough Dep. at 68-69, 95-97. The court will deny the FDIC's motion for summary judgment on liability.

### B. The FDIC's Delay in Giving Notice of Claims

Fidelity argues that the FDIC's claims are barred as a result of the delay in giving notice under the CPLs. The CPLs require claims to be made "promptly" and when "the failure to give prompt notice shall prejudice the Company, the liability of the Company hereunder shall be reduced to the extent of such prejudice." Def.'s Ex. N (CPLs). Fidelity asserts that WaMu had notice of potential fraud regarding the transactions at issue as early as October 2007. At that time, loan notes showed that WaMu suspected five of the loans to be fraudulent. See Def.'s Br. at 10. Bachi was indicted for bank fraud in April 2013; the FDIC notified Fidelity of its claim in September 2014, after it took the deposition of Metro-West's Sarah Fawaz.

Fidelity has not shown that the FDIC should have been aware of its CPL

claims prior to September 2014. Although WaMu may have investigated some of the loans as fraudulent, there was no indication prior to Bachi's indictment and Fawaz's deposition that Metro-West may have been aware of the fraud.

Fidelity contends that it has been prejudiced by the passage of time, because relevant documents have been destroyed, including Metro-West's closing files, the mortgage broker's files, WaMu's memos and fraud investigative files, and Metro-West's bank records showing the disbursements of the loan funds. Fidelity has not explained, however, how the missing documents have prejudiced its ability to defend this case. See FNTIC, at *10 ("[A]n insurer must establish what is in fact lost by the missing evidence, how this prejudices its position, and why information available from other sources is inadequate."). Further, the question of prejudice is generally left to the trier of fact. Id. See also West Bay Exploration Co. v. AIG Specialty Agencies, Inc., 915 F.2d 1030, 1037 (6th Cir. 1990).

Fidelity also claims that the FDIC's claims are barred by laches. For laches to apply, Fidelity must prove (1) a lack of diligence by the FDIC and (2) prejudice. Regents of Univ. of Michigan v. State Farm Mut. Ins. Co., 250 Mich. App. 719, 734 (2002). As discussed above, Fidelity has not demonstrated a lack of diligence on the FDIC's part or prejudice as a matter of law.

Encompassed in Fidelity's "delay" argument is that the FDIC "knowingly

and voluntarily impaired the value" of Fidelity's right of subrogation. The CPLs provide that "Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation." Fidelity argues that the FDIC purposely waited until the last minute (the last day before the statute of limitations ran) before filing this suit, precluding Fidelity from filing suit against the wrongdoers. Fidelity has not presented evidence that the FDIC "knowingly and voluntarily" impaired its right of subrogation. The court will deny Fidelity's motion as to this issue.

### C. Discharge of Mortgages

Fidelity also argues that the FDIC is barred from recovering under sixteen of the CPLs because the mortgages securing these loans were discharged. The CPLs contain the following condition (Condition D):

> Liability under this letter is limited to the amount of the loan policy of title insurance to be issued, and is subject to all of the terms, conditions, and provisions contained therein. Any payment of loss under this letter shall constitute a payment under the policy.

Def.'s Ex. D (CPL). As Fidelity reads this provision, the terms and conditions of the title policy limit its liability under the CPL. Under the title policy a discharge of the mortgage reduces the amount of insurance "pro tanto" or terminates the liability of the company. See Def.'s Ex. CC at ¶ 9. This is because an insurer's

liability under the title insurance policy continues only so long as the insured retains an interest in the mortgage. Fidelity argues, accordingly, that a discharge of the mortgage also terminates its liability under the CPL.

Fidelity's interpretation is at odds with the fact that the CPL and title policy are separate contracts that protect against entirely different risks. Under Fidelity's interpretation, a lender would need to retain an interest in the mortgage in order to recover under the CPL. This interpretation is not supported by the case law. See JP Morgan Chase Bank, 795 F. Supp. 2d at 628-29 (FDIC may bring CPL claim even through it no longer owns the related title policy); FATCO, 499 Mich. at 86-89 (full credit bid after foreclosure releases borrower from debt but does not bar claim under CPL); FDIC v. Attorneys' Title Ins. Fund, Inc., 2014 U.S. Dist. LEXIS 126471 (S. D. Fla. Sept. 3, 2014) ("The fact that the title insurer limits its liability under the CPL to the amount of the underlying insurance policy does not make the documents inseparable."). Moreover, in order for a lender to suffer an "actual loss" under a CPL, it would need to receive less than the loan amount for the underlying property, thereby extinguishing its interest. See FATCO, 499 Mich. at 98; JP Morgan Chase, 750 F. 3d at 584 (damages for breach of CPL equal the total amount of the loan minus the book value received after sale). Yet Fidelity argues that once the lender's interest is extinguished (thereby allowing its "actual

loss" to be calculated), it is absolved of liability.

The language of Condition D is more reasonably interpreted as limiting the amount of liability under the CPL to the loan amount under the title policy, and to avoid double recovery under the title policy and CPL. At most, Fidelity has highlighted an ambiguity in the CPL language, which is to be construed against it. See Fifth -Third Mortgage-Mi v. Hance, 2011 Mich. App. LEXIS 1715 at *14-15 (Sept. 29, 2011) (in the absence of extrinsic evidence regarding the parties' intent, disputed ambiguous terms are construed against the drafter).

### III.  Damages

The FDIC contends that the proper formula for measuring its damages is subtracting the "book value" of the subject loans from the total value of the loans at the time of WaMu's failure. See JPMC, 750 F.3d at 583-84. Fidelity takes issue with the FDIC's calculation of actual loss, noting that it does not take into account proceeds from insurance claims or foreclosure sales. The FDIC has not explained why such proceeds should not be considered when determining its actual loss. The court finds that the FDIC has not sustained its burden of demonstrating that it is entitled to summary judgment on damages.

### ORDER

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment

and Defendant's second motion for summary judgment are DENIED.

                                                s/John Corbett O'Meara
                                                United States District Judge
Date: January 3, 2017

     I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, January 3, 2017, using the ECF system.

                                                s/William Barkholz
                                                Case Manager